Docket No. 14-60012

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

═══════════════════════════

IN RE: BENJAMIN MENJIVAR,
DEBTOR.

--------------------------

BENJAMIN MENJIVAR, *et al.*,
PLAINTIFFS-APPELLANTS,

*vs.*

WELLS FARGO BANK, N.A., *etc.*, *et al.*,
CREDITOR-DEFENDANT-APPELLEE.

═══════════════════════════

U.S. DISTRICT COURT BANKRUPTCY NO. 2:11-bk-61208-NB
Adversary No. 2:12-ap-01125-NB
CHAPTER 13
APPEAL FROM THE DECISION OF THE
the NINTH CIRCUIT BANKRUPTCY APPELLATE PANEL
B.A.P. Docket No. 12-1608

═══════════════════════════

## APPELLEE'S ANSWERING BRIEF

═══════════════════════════

JEREMY E. SHULMAN
ROBERT C. LITTLE
STEVEN R. TELLES
ANGLIN FLEWELLING RASMUSSEN
CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
(626) 535-1900 | F: (626) 577-7764 | rlittle@afrct.com

*Attorneys for Creditor, Defendant and Appellee*
WELLS FARGO BANK, N.A., *etc.*

Docket No. 14-60012

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

IN RE: BENJAMIN MENJIVAR,
DEBTOR.

--------------------------

BENJAMIN MENJIVAR, *et al.*,
PLAINTIFFS-APPELLANTS,

*vs.*

WELLS FARGO BANK, N.A., *etc.*, *et al.*,
CREDITOR-DEFENDANT-APPELLEE.

---

U.S. DISTRICT COURT BANKRUPTCY NO. 2:11-bk-61208-NB
Adversary No. 2:12-ap-01125-NB
CHAPTER 13
APPEAL FROM THE DECISION OF THE
THE NINTH CIRCUIT BANKRUPTCY APPELLATE PANEL
B.A.P. Docket No. 12-1608

---

## APPELLEE'S ANSWERING BRIEF

---

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Creditor, Defendant and Appellee WELLS FARGO BANK, N.A., successor to by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB (Wells Fargo), identifies WFC Holdings Corporation, Greater Bay Bancorp, Placer Sierra Bancshares, Century Bancshares, Inc., Charter Holdings, Inc., and IBID, Inc. as parent corporations, and it also identifies Wells Fargo & Company (NYSE:WFC) as a parent corporation and a publicly held corporation that owns 10% or more of its stock.

Respectfully submitted,

Dated: September 4, 2015

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

By: _s/ Robert C. Little_____
ROBERT C. LITTLE

*Appellate Counsel for Creditor,*
*Defendant and Appellee*
WELLS FARGO BANK, N.A.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...................................................... I

TABLE OF CONTENTS ........................................................................... II

TABLE OF AUTHORITIES ...................................................................... VI

I.     INTRODUCTION ............................................................................ 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 3

     A.    California Code of Civil Procedure section 338(d) sets forth a three-year statute of limitations for fraud claims. Did both the bankruptcy court and Bankruptcy Appellate Panel (BAP) correctly apply this statutory limitations period to the fraud claims alleged in the Menjivar's First Amended Complaint (FAC)? ....................................................................... 3

     B.    A claim for rescission of a contract that is brought under California law requires allegations establishing the existence of a contract that can be rescinded, notice of rescission, and the rescinding party's tender of the benefits of the contract to the other party. The Menjivars' FAC alleges none of these essential elements. Does the FAC state a claim for rescission? ......................... 3

     C.    Are the facts alleged on the face of the FAC consistent with a California state law claim for rescission of contract or for violation of California's Unfair Competition Law (UCL)? ................. 3

     D.    Did the Menjivars waive their challenge in this appeal to Wells Fargo's standing, as a national bank, to assert federal preemption of their state law claims when they failed to raise this issue below? Assuming this issue has not been waived, does a national bank which is the successor to a federal savings bank have standing to assert HOLA preemption with respect to state law claims arising from the origination of a loan by that federal savings bank? ....................................................................... 3

III.   STATEMENT OF FACTS ................................................................... 4

IV. STATEMENT OF THE CASE ...................................................................7

    A. The First State Court Lawsuit .................................................7

    B. The Second State Court Lawsuit.............................................7

    C. The Three Chapter 13 Bankruptcies Variously Filed By Sara and Benjamin Menjivar.........................................................8

    D. The Adversary Proceeding in Bankruptcy ............................9

    E. The Motion to Dismiss the FAC in the Adversary Proceeding .........10

    F. The Appeal Before the Ninth Circuit Bankruptcy Appellate Panel. ....................................................................12

V. STANDARD OF REVIEW ....................................................................18

VI. SUMMARY OF ARGUMENT................................................................19

VII. ARGUMENT AND LEGAL ANALYSIS.................................................21

    A. The Menjivars never pleaded or asserted a state law claim for rescission in the proceedings below. Any claim for rescission was waived. ........................................................21

        1. *For the first time on appeal, the Menjivars attempt to assert a rescission claim under California Civil Code section 1689(b). This is also the first time that they contend that a longer limitations period under California Code of Civil Procedure section 337(3) applies to their moribund claims*........................................................21

        2. *Even if the Menjivars had previously attempted to plead claims for rescission under state law, those claims would fail due to their inability to allege either notice of rescission or a tender of restoration of the Loan funds to Wells Fargo — essential elements for a rescission claim.* .......27

B.   The 3-year statute of limitations provided under California Code of Civil Procedure section 338(d) applies to the Menjivars' allegations of fraud. Those allegations are untimely because their initial complaint in January 2011, more than three years after loan origination in July 2007.................................................31

C.   Any "declaratory relief" based on fraud is non-actionable.................37

D.   No UCL claim has been alleged in the FAC, and the opportunity allege a UCL claim was long ago forfeited.........................................38

　　1.   *The UCL has been waived due to the Menjivars' failure to raise this statutory claim in any earlier proceedings.*..............38

　　2.   *A UCL claim has also been waived due to the dearth of any supporting arguments in the Opening Brief.*......................39

　　3.   *The Menjivars do not demonstrate an actionable UCL claim.*............................................................................41

E.   The Menjivars have never sought leave to amend in order to assert a state law rescission or UCL claim. Their failure to do so constitutes a further ground for affirming the rulings by the bankruptcy court and the BAP.............................................................43

F.   The Menjivars have now abandoned several issues previously raised in the proceedings which they apparently deem unworthy of review.............................................................................................47

G.   The Menjivars' argument that Wells Fargo may not assert federal preemption is neither well taken in view of the facts of this case, nor does their discussion enable meaningful review of this issue in view of their omission of entire lines of authority.........................48

　　1.   *HOLA Background*...................................................................49

-iv-

2. *Ninth Circuit district court decisions have split into three separate lines of authority regarding whether HOLA preemption may be asserted by a federal savings bank which has merged into a national bank. The Menjivars rely on an outlying minority position that is unpersuasive and should be disregarded as irrelevant to disposition of their appeal.* .............................................................. *50*

H. The federal statutes asserted by the Menjivars under the FHA, ECOA and TILA are all untimely. ...................................................... 54

VIII. CONCLUSION ................................................................................... 56

CERTIFICATE OF COMPLIANCE ............................................................. 57

CERTIFICATE OF SERVICE ..................................................................... 59

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
  948 F.2d 536 (9th Cir. 1991) ..................................................................26

*Alaska Ctr. for the Env't v. United States Forest Serv.*,
  189 F.3d 851 (9th Cir. 1999) ..................................................................39

*Allen v. Beverly Hills*,
  911 F.2d 367 (9th Cir. 1990) ..................................................................47

*American Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ..................................................................31

*Baccei v. United States*,
  632 F.3d 1140 (9th Cir. 2011) ...........................................................4, 24

*Bazuaye v. INS*,
  79 F.3d 118 (9th Cir. 1996) ....................................................................39

*Bolker v. Commissioner*,
  760 F.2d 1039 (9th Cir. 1985) ................................................................29

*Brazil v. United States Dep't of the Navy*,
  66 F.3d 193 (9th Cir. 1995) ..............................................................25, 41

*Brown v. U.S. Bancorp*,
  No. CV 11-6125 CAS, 2012 U.S. Dist. LEXIS 26226
  (C.D. Cal. Feb. 27, 2012) ........................................................................47

*Brownfield v. City of Yakima*,
  612 F.3d 1140 (9th Cir. 2010) ................................................................43

*Burnett v. Resurgent Capital Servs. (In re Burnett)*,
  435 F.3d 971 (9th Cir. 2006) ..................................................................25

*California Architectural Building Products, Inc. v.
  Franciscan Ceramics, Inc.*,
  818 F.2d 1466 (9th Cir. 1987) ..........................................................47, 48

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ............................................................21

*Cedano-Viera v. Ashcroft*,
    324 F.3d 1062 (9th Cir. 2003) ..........................................................39

*Chikosi v. Gallagher*,
    No. 13-56031, 2015 U.S. App. LEXIS 13308 (9th Cir. July 30, 2015) .......18, 35

*Christian Legal Soc'y Chap. of Univ. of Cal. v. Wu*,
    626 F.3d (9th Cir. 2010) ............................................................40, 43

*Cold Mt. v. Garber*,
    375 F.3d 884 (9th Cir. 2004) ......................................................25, 41

*Coley v. Gonzales*,
    55 F.3d 1385 (9th Cir. 1995) ..........................................................40

*Cortez v. American Wheel (In re Cortez)*,
    191 B.R. 174 (B.A.P. 9th Cir. Cal. 1995) ..........................................14

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) ................................................................26, 42

*CTS Corp. v. Waldberger*,
    134 S. Ct. 2175 (2014) ..................................................................27

*Dang v. First Horizon Home Loan Corp.*,
    No.12cv0343 JAH (NLS), 2013 U.S. Dist. LEXIS 199669 at *8 (S.D.
    Cal. Aug. 22, 2013) ............................................................18, 35, 37

*Davenport v. Litton Loan Servicing, LP*,
    725 F. Supp. 2d 862 (N.D. Cal. 2010) ..........................................32, 33

*DeLeon v. Wells Fargo Bank, N.A.*,
    729 F. Supp. 2d 1119 (N.D. Cal. 2010) ....................................7, 46, 54

*Dewsnup v. Timm*,
    502 U.S. 410 (1992) ......................................................................14

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
    713 F.3d 502 (9th Cir. 2013) ..........................................................21

*Employee Painters' Trust v. J & B Finishes*,
   77 F.3d 1188 (9th Cir. 1996) ............................................................45

*Enewally v. Wash. Mut. Bank (In re Enewally)*,
   368 F.3d 1165 (9th Cir. 2004) ..........................................................30

*Farahani v. Floria*,
   No.: 12-CV-04637-LHK, 2013 U.S. Dist. LEXIS 56679 (N.D. Cal. Apr.
   19, 2013) ............................................................................................32

*Farmer v. McDaniel*,
   666 F.3d 1228 (9th Cir. 2012) .....................................................40, 51

*Ferguson v. JPMorgan Chase Bank, N.A.*,
   No. 2:14-CV-00328-KJM-KJN, 2014 U.S. Dist. LEXIS 70013 (E.D.
   Cal. May 20, 2014) ..............................................................18, 35, 38

*Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982)............................................................................52

*Fischer v. Vantive Corp.*,
   283 F.3d 1079 (9th Cir. 2001) ..........................................................48

*Gerber v. Wells Fargo Bank, N.A.*,
   No. CV 11-01083-PHX-NVW, 2012 U.S. Dist. LEXIS 15860 (D. Ariz.
   Oct. 19, 2011) ..............................................................................53, 55

*Greenwood v. FAA*
   28 F.3d 971 (9th Cir. 1994) .........................................................40, 43

*Hale v. United States Trustee*,
   509 F.3d 1139 (9th Cir. 2007) ..........................................................51

*Henry A. v. Willden*,
   678 F.3d 991 (9th Cir. 2012) ............................................................47

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946)............................................................................57

*Husain v. Olympic Airways*,
   316 F.3d 829 (9th Cir. 2002) ..............................................................7

*Independent Towers of Wash. v. Washington*,
350 F.3d 925 (9th Cir. 2003) ...........................................................22

*Jimenez v. Franklin*,
680 F.3d 1096 (9th Cir. 2012) .........................................................27

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .........................................................44

*Ketab Corp. v. Mesriani Law Group*,
No. 2:14-cv-07241-RSWL (MRW), 2015 U.S. Dist. LEXIS 58880
(C.D. Cal. May 5, 2015) ...................................................................46

*Knox v. Davis*,
260 F.3d 1009 (9th Cir. 2001) .........................................................33

*Kramer v. Bank of Am., N.A.*,
No. 1:13-CV-01499-AWI-MJS, 2014 U.S. Dist. LEXIS 54252 (E.D.
Cal. Apr. 17, 2014) ..........................................................................32

*Leghorn v. Wells Fargo Bank, N.A.*,
950 F. Supp. 2d 1093 (N.D. Cal. 2013)............................................54

*Levald, Inc. v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993) ...........................................................40

*Manantan v. Nat'l City Mortg.*,
2011 U.S. Dist. LEXIS 82668 (N.D. Cal. July 28, 2011) .................41

*Marques v. Fed. Home Loan Mortg. Corp.*,
No. 12cv1873-IEG (MDD), 2013 U.S. Dist. LEXIS 66498 (S.D. Cal.
May 8, 2013)....................................................................................44

*Marquez v. Wells Fargo Bank, N.A.*,
No. C 13-2819 PJH, 2013 U.S. Dist. LEXIS 131364 (N.D.Cal. Sept. 13,
2013) ................................................................................................54

*McOmie-Gray v. Bank of Am. Home Loans*,
667 F.3d 1325 (9th Cir. 2012) .........................................................57

*Merritt v. Countrywide Financia Corp.*,
759 F.3d 1023 (9th Cir. 2014) .........................................................33

*Meruelo Maddux Properties-760 S. Hill St., LLC v.*
  *Bank of Am., N.A. (In re Meruelo Maddux Props., Inc.)*,
  667 F.3d 1072 (9th Cir. 2011) .............................................................7, 21

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ...............................................................44

*Munoz v. Cnty. of Imperial*,
  667 F.2d 811 (9th Cir. 1982) ...............................................................28

*Navajo Nation v. United States Forest Serv.*,
  535 F.3d 1058 (9th Cir. 2008) .............................................................43

*Neu v. Terminix Int'l, Inc.*,
  No. C 07-6472 CW, 2008 U.S. Dist. LEXIS 32844 (N.D. Cal. Apr. 8,
  2008) ....................................................................................................44

*Nguyen v. Wells Fargo Bank, N.A.*,
  749 F. Supp. 2d 1022 (N.D. Cal. 2010)..................................................7

*North Star Int'l v. Arizona Corp. Comm'n*,
  720 F.2d 578 (9th Cir. 1983) .....................................................4, 24, 41

*O'Rourke v. Seaboard Surety Co.(In re E.R. Fegert, Inc.)*,
  887 F.2d 955 (9th Cir. 1989) ...............................................................12

*Office of the United States Trustee v. Hayes (In re Bishop, Baldwin,*
  *Rewald, Dillingham & Wong)*,
  104 F.3d 1147 (9th Cir. 1997) .............................................................26

*Okwu v. McKim*,
  682 F.3d 841 (9th Cir. 2012) ...............................................................21

*Osorio v. Wachovia Mortg.*,
  FSB, No. 12-cv-663 - IEG (BGS), 2012 U.S. Dist. LEXIS 64600
  (S.D.Cal. May 8, 2012).........................................................................54

*Penermon v. Wells Fargo Bank, N.A.*,
  47 F. Supp. 3d 982 (N.D. Cal. 2014)...............................................55, 56

*Peterson v. Highland Music*,
  140 F.3d 1313 (9th Cir. 1998) .............................................................39

*Poyorena v. Wells Fargo Bank, N.A.*,
  No. CV 14-683 GAF (Ex), 2014 U.S. Dist. LEXIS 49319 (C.D.Cal.
  Apr. 3, 2014) ...................................................................................... 54

*Railroad Telegraphers v. Railway Express Agency, Inc.*,
  321 U. S. 342 (1944) ......................................................................... 27

*Retz v. Samson (In re Retz)*,
  606 F.3d 1189 (2010) ........................................................................ 21

*Rhue v. Wells Fargo Home Mortg.*,
  No. CV 12-05394 DMG, 2012 U.S. Dist. LEXIS 188384 (C.D. Cal.
  Nov, 27, 2012) ................................................................................... 54

*Rijhwani v. Wells Fargo Home Mortg., Inc.*,
  No. C 13-05881 LB, 2014 U.S. Dist. LEXIS 27516 (N.D. Cal. Mar. 3,
  2014) .................................................................................................. 55

*Rodriguez v. U.S. Bank Nat. Ass'n*,
  No. 12-00989 WHA, 2012 U.S. Dist. LEXIS 77228 (N.D. Cal. June 4,
  2012) .................................................................................................. 54

*Roque v. Wells Fargo Bank N.A.*,
  No. 2:14-cv-00040-ODW(SSx), 2014 U.S. Dist. LEXIS 32935 (C.D.
  Cal. Feb. 3, 2014) .............................................................................. 55

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) ................................... 37, 38, 45

*Sanchez v. Superior Court of Cal. San Diego N. County Div.*,
  No. 10-cv-0218 BEN (WVG), 2010 U.S. Dist. LEXIS 90606 (S.D. Cal.
  Aug. 30, 2010) ................................................................................... 46

*Silvas v. E*Trade Mortgage Co.*,
  514 F.3d 1001 (9th Cir. 2008) ........................................................... 52

*Simpson v. Union Oil Co. of California*,
  411 F.2d 879 (9th Cir. 1969) ............................................................. 51

*Swartz v KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007.) ............................................................ 21

*United States v. Dunkel*,
    927 F.2d (7th Cir. 1991) ............................................................40, 43

*United States v. Elias*,
    921 F.2d 870 (9th Cir. 1990) .......................................................7, 25

*United States v. Graf*,
    610 F.3d 1148 (9th Cir. 2010) ..........................................................51

*United States v. Kubrick*,
    444 U.S. 111 (1979)..........................................................27, 29, 42

*United States v. Munoz*,
    746 F.2d 1389 (9th Cir. 1984) ..........................................................26

*United States v. Patrin*,
    575 F.2d 708 (9th Cir. 1978) .......................................................29, 42

*United States v. Washington*,
    573 F.3d 701 (9th Cir. 2009) ............................................................21

*Valtierra v. Wells Fargo Bank, N.A.*,
    No. 1:10-0849, 2011 U.S. Dist. LEXIS 18669 (E.D. Cal. Feb. 10, 2011) .........55

*Vincent v. Trend Western Technical Corp.*,
    828 F.2d 563 (9th Cir. 1986) .......................................................48, 49

*Western Radio Servs. Co. v. Qwest Corp.*,
    678 F.3d 970 (9th Cir. 2012) ............................................................43

*Zadrozny v. Bank of N.Y. Mellon*,
    720 F.3d 1163 (9th Cir. 2013) ..........................................................38

### STATE CASES

*Bower v. AT&T Mobility*,
    LLC, 196 Cal.App.4th 1545 (2011)....................................................45

*Chakmak v. H. J. Lucas Masonry, Inc.*,
    55 Cal. App. 3d 124 (1976) .......................................................36, 37

*Charles Brown & Sons v. White Lunch Co.*,
    92 Cal. App. 457 (1928) ..........................................................36, 37

*Hatch v. Collins*,
225 Cal. App. 3d 1104 (1990) ..................................................18, 35

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ..................................................44

*Jenkins v. JP Morgan Chase Bank, N.A.*,
216 Cal. App. 4th 497 (2013) ..................................................46

*Lazar v Superior Court*,
12 Cal.4th 631 (1996) ..................................................44

*Mangini v. Aerojet-General Corp.*,
230 Cal. App. 3d 1125 (1991) ..................................................41

*Miller v. Bechtel Corp.*,
33 Cal. 3d 868 (1983) ..................................................38

*Onofrio v. Rice*,
55 Cal. App. 4th 413 (1997) ..................................................32

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
2 Cal. App. 4th 153 (1991), explained..................................................44

*Touli v. Santa Cruz County Title Co.*,
20 Cal. App. 2d 495 (1937) ..................................................31

*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.*,
50 Cal. 4th 913 (2010) ..................................................31

**FEDERAL STATUTES**

11 U.S.C. § 544(b)(1)..................................................29

12 U.S.C. § 1461, et seq..................................................3, 5, 53

12 U.S.C. § 1464 ..................................................52

15 U.S.C. § 1601, et seq..................................................3, 19, 23, 57

15 U.S.C. § 1640(e) ..................................................57

15 U.S.C. § 1691, et seq..................................................*passim*

15 U.S.C. § 1691e(f) .................................................................57

28 U.S.C. § 1452(a) ..................................................................12

42 U.S.C. §§ 3601-3619 ....................................................*passim*

42 U.S.C. § 3613(a)(1)(A) .........................................................57

HOLA...................................................................................*passim*

**STATE STATUTES**

CAL. BUS. & PROF. CODE § 17200 ...................................*passim*

CAL. CIV. CODE § 1566 .............................................................36

CAL. CIV. CODE § 1689(b) .................................................*passim*

CAL. CIV. CODE § 1691 .........................................................31, 32

CAL. CIV. CODE §§ 1709–1710.......................................34, 36, 42

CAL. CIV. CODE § 3439.12 .................................................*passim*

CAL. CIV. PROC. CODE § 338(d).........................................*passim*

CAL. CIVIL CODE § 1691(a).......................................................30

CAL. CIVIL CODE § 1691(b) ..................................................31, 32

CAL. CODE CIV. PROC. § 337(1).....................................20, 27, 50

CAL. CODE CIV. PROC. § 337(3).........................................*passim*

**RULES**

9TH CIR. R. 30-1.4(a)(ii)............................................................12

FED. R. APP. P. 40 (a)(2).............................................................7

FED. R. BANKR. P. 8022(a)(2) ....................................................7

FED. R. CIV. P. 9(b)....................................................................44

FED. R. CIV. P. 12(b)(6)..............................................................21

FED. R. CIV. P. 15(a)(2) ..............................................................................46

**REGULATIONS**

12 C.F.R. § 560.2(a)..................................................................................52

12 C.F.R. § 560.2(b) .................................................................................52

12 C.F.R. § 560.2(b)(4), (5), (9) ...............................................16, 20, 56

## I.  INTRODUCTION

This appeal is brought by Benjamin and Sara Menjivar (the Menjivars) from the Bankruptcy Appellate Panel's affirmance of a bankruptcy court order granting the motion to dismiss their First Amended Complaint (FAC) in an adversary proceeding in bankruptcy brought against Wells Fargo Bank, N.A. (Wells Fargo).[1] The bankruptcy court's dismissal of the FAC had brought an end to years of legal actions they began in 2010 in an effort to avoid or postpone the foreclosure of their property securing a loan on which they long ago defaulted. The Menjivars' challenges to the foreclosure proceedings have involved two state court lawsuits and three Chapter 13 filings, which ultimately culminated in the bankruptcy court's dismissal of a first amended complaint brought as an adversary proceeding in the third Chapter 13 action, and Ninth Circuit Bankruptcy Appellate Panel (BAP)'s reasoned affirmance.

Wells Fargo made a $498,750 loan to the Menjivars in October 2005, secured by a first deed of trust recorded against real property in Alhambra, California. Less than two years later, the Menjivars refinanced their home loan twice. In January

---

[1]  "Wells Fargo" is Creditor, Defendant and Appellee Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB (Wachovia), formerly known as World Savings Bank, FSB (World Savings). The Menjivars acknowledge the name changes and corporate merger associated with World Savings, Wachovia, and Wells Fargo. (AOB 4.)

-1-

2007, they refinanced and borrowed $538,670, and six months later in July 2007, they refinanced again and borrowed $551,650. In January 2009, the Menjivars stopped making regular monthly payments on their July 2007 Loan.

Wells Fargo initiated non-judicial foreclosure proceedings by recording a notice of default in August 2010. The Menjivars were then more than $47,000 in arrears on their Loan. A notice of trustee's sale was recorded in November 2010, then showing a total indebtedness of more than $620,000.

To stall foreclosure, the Menjivars engaged in a series of legal maneuvers and bankruptcy filings. They filed their first complaint against Wells Fargo in state court in November 2010, voluntarily dismissed it, and then filed a second state court action in January 2011. That same month in 2011, Sara also filed a Chapter 13 bankruptcy petition that was dismissed less than a month later. Benjamin filed his first Chapter 13 bankruptcy case eight days later in February 2011. It was dismissed ten months later, but was followed by Benjamin's second Chapter 13 petition in December 2011, filed just eight days after dismissal of the first.

In January 2012, the Menjivars removed their second state court action — which had been lying fallow for over a year — to Benjamin's second Chapter 13 bankruptcy. The removal converted their state court action into the adversary proceeding dismissed by the bankruptcy court. The BAP affirmed. This appeal followed.

-2-

The bankruptcy court's order granting Wells Fargo's motion to dismiss the Menjivars' FAC without leave to amend, and the BAP's reasoned affirmance of that order, are unassailably correct on this record. This Court should affirm.

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

**A.** California Code of Civil Procedure section 338(d) sets forth a three-year statute of limitations for fraud claims. Did both the bankruptcy court and Bankruptcy Appellate Panel (BAP) correctly apply this statutory limitations period to the fraud claims alleged in the Menjivar's First Amended Complaint (FAC)?

**B.** A claim for rescission of a contract that is brought under California law requires allegations establishing the existence of a contract that can be rescinded, notice of rescission, and the rescinding party's tender of the benefits of the contract to the other party. The Menjivars' FAC alleges none of these essential elements. Does the FAC state a claim for rescission?

**C.** Are the facts alleged on the face of the FAC consistent with a California state law claim for rescission of contract or for violation of California's Unfair Competition Law (UCL)?

**D.** Did the Menjivars waive their challenge in this appeal to Wells Fargo's standing, as a national bank, to assert federal preemption of their

-3-

state law claims when they failed to raise this issue below? Assuming this issue has not been waived, does a national bank which is the successor to a federal savings bank have standing to assert HOLA preemption with respect to state law claims arising from the origination of a loan by that federal savings bank?

## III.  STATEMENT OF FACTS

The facts are as drawn from the pleadings, attachments to the pleadings, matters which are the proper subject of judicial notice, and the record from the proceedings below.[2] The BAP's factual findings are entitled to considerable deference by this Court.[3]

---

[2]  The facts presented below are conclusive in determining the scope of this appeal. If the Menjivars believed any facts were "overlooked or misapprehended," then a petition for rehearing before the BAP was the available procedure for making such a challenge. FED. R. APP. P. 40 (a)(2); FED. R. BANKR. P. 8022(a)(2). The Menjivars did not pursue a petition for rehearing, however. (SER 118–120: absence of petition for rehearing on BAP's docket.) Thus, the record consists of facts in the proceedings below. *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) (new or different facts "are not part of the record on appeal" and the appellant "must bear the burden of a factual record that is incomplete on the issues" he or she raises).

[3]  To the extent that the BAP made factual findings, they may be reviewed for clear error. *Meruelo Maddux Properties-760 S. Hill St., LLC v. Bank of Am., N.A. (In re Meruelo Maddux Props., Inc.)*, 667 F.3d 1072, 1076 (9th Cir. 2011). The clear error standard is "deferential," such that the reviewing Court accepts the fact-finding in the lower court's proceedings unless there is a "definite and firm

*[Footnote Text Cont'd on Next Page]*

-4-

On October 28, 2005, Benjamin and Sara Menjivar borrowed $498,750 from Wells Fargo's predecessor World Savings[4] to refinance a first and second mortgage into a single mortgage. (AER 002:15–003:1; AER 206–23, 302:17-20 [¶ 26].) The loan was secured by a Deed of Trust recorded in Los Angeles County on November 4, 2005, encumbering the Menjivars' residential real property located at 1129 South Second Street, Alhambra, California 91801-4722 (the Property). (AER 206 & 208, 302:24-28 [¶ 28].) The Menjivars allege they are now "confused" whether they borrowed $498,750 or $515,423.40. (AER 303 [¶ 29].)

The Menjivars acknowledge that they refinanced their loan twice with World Savings, once on January 8, 2007 when they borrowed $538,670 (AER 003:1-9, 226–44, 248–49, 303:8-9 [¶ 32]), and again on July 9, 2007 when they borrowed $551,650 (AER 003:10-11, 260–78, 280–14).

---

*[Footnote Text Cont'd from Previous Page]*
conviction that an error has been made." *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002). So long as a lower court's "findings are plausible in light of the record viewed in its entirety, the appellate court cannot reverse even if it is convinced it would have found differently." *Id.*

[4]  Wells Fargo, through name changes and a corporate merger, succeeded to its predecessors Wachovia and World Savings (AER 169:15–170:4 [¶¶ 4–7], 195–204 [Exhs. D–G].) Many courts have taken judicial notice of the name changes and merger associated with Wells Fargo. *See e.g.*, *Nguyen v. Wells Fargo, N.A.*, 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010) (World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB, then merged into Wells Fargo Bank, N.A.); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1121 (N.D. Cal. 2010). The Menjivars acknowledge and plead these same name changes and merger. (AER 300:9-15 [¶ 17].)

The July 2007 loan terms that were the subject of the Menjivars' FAC are memorialized in an Adjustable Rate Mortgage Note (Note). (AER 251–56.) The Note was secured by a Deed of Trust recorded with the Los Angeles County Recorder on August 2, 2007. (AER 258–78, 280–81, 303:27–304:1[¶ 37].)

According to the Menjivars, they were "deceived" by World Savings into thinking that the Note's adjustable interest rate was "a fixed-rate mortgage." (AER 003:11-14; AER 303:24-26 [¶ 36].[5]) The Menjivars sought in some way to "draw a connection" between the "mortgage" Loan and the death of a family member from mental illness and another family member's stress-related stroke. (AER 12:27–13:2 [¶ 43].)

The Menjivars failed to make their Loan payment that fell due on January 15, 2009. (AER 004:8-9; AER 285.) They next hired a law firm to obtain a loan modification. (AER 305:12-15 [¶ 46].)

On August 10, 2010, Wells Fargo recorded a Notice of Default and Election to Sell Under Deed of Trust. At this point the Menjivars were more than $47,447 in arrears on the Loan. (AER 004:8-10; AER 284–86, 305:16-17 [¶ 47]; SER 046:4-5.)

A Substitution of Trustee was recorded on September 14, 2010 by which NDeX

---

[5]   *But see* AER 251 ("Adjustable Rate Mortgage Note"  [¶ 1. (B) ("Interest Change Dates [¶] The interest rate I will pay may change on the 15th day of September, 2007 and on the same day every month thereafter.")].)

West, L.L.C. was substituted as trustee for Golden West, and Wells Fargo was designated as the beneficiary under the Deed of Trust. (AER 288-90.) Two months later, on November 15, 2010, a Notice of Trustee's Sale was recorded by Wells Fargo. (AER 004:8-11; AER 292–94, 305:18-20 [¶ 48].) The total then due on the Loan exceeded $620,482. (AER 293.)

The trustee's sale scheduled for December 8, 2010 (AER 226) did not take place. Instead, "a new foreclosure sale was set for January 2011." (AER 305:28 [¶ 52].)

## IV. STATEMENT OF THE CASE

### A. The First State Court Lawsuit

On November 18, 2010, the Menjivars brought suit in Los Angeles Superior Court seeking to restrain the pending foreclosure sale of the Property. (AER 305:21-24 [¶¶ 49–50]; SER 046:10-11.) They recorded a *lis pendens*. (*Id.*) But following a timely removal of the case to federal district court (AER 004:16-18; 075), the Menjivars requested a dismissal of their first lawsuit on January 17, 2011. (AER 004:19-20; AER 169 [¶ 1], 174, 305:25-27 [¶ 51]; SER 046:13-14.

### B. The Second State Court Lawsuit

A day later, on January 18, 2011 — but before the district court had yet entered an order dismissing the first lawsuit —the Menjivars immediately filed a second lawsuit before the Los Angeles Superior Court. Again they sought to restrain the

-7-

pending foreclosure sale. (AER 005:1-4; AER 306:1-5 [¶ 53].) But they failed to serve Wells Fargo in this new action for over a year. (SER 046:20–22.)

### C. The Three Chapter 13 Bankruptcies Variously Filed By Sara and Benjamin Menjivar.

After it became apparent the state court was unable to grant a temporary restraining order due to the judge's illness, Sara Menjivar filed her first Chapter 13 bankruptcy petition on January 19, 2011. (AER 005:4-8; AER 306:1-8 [¶¶ 53–54], 169:15-17 [¶ 3], 179–82.) Her bankruptcy was dismissed less than a month later. (AER 005:8-10; AER 181–82 [Dkt. Nos. 11 & 17], 306:11-13 [¶ 56].)

Benjamin Menjivar then filed his first Chapter 13 bankruptcy petition on February 23, 2011, eight days after his spouse's bankruptcy had been dismissed. (AER 005:11-13; AER 306:17-21 [¶ 58], 169:17-20 [¶ 3], 183–88.) On October 22, 2011, the bankruptcy court granted Wells Fargo's motion for relief from stay. (AER 307:3-6 [¶ 62], 187 [Dkt. No. 29].) Less than two months later, on December 8, 2011, his bankruptcy was dismissed. (AER 005:13-15; AER 307:7-10 [¶ 62], 188 [Dkt. No. 32].)

Five days later on December 13, 2011, the Los Angeles Superior Court held a status conference in the Menjivars' second state court lawsuit. (AER 176.) The Menjivars failed to appear at the status conference, so the court set an order to show cause for their failure to appear that was noticed for hearing on January 31, 2012. (*Id.*)

On December 16, 2011, Benjamin Menjivar filed his second Chapter 13 bankruptcy petition. This was just eight days after his previous Chapter 13 bankruptcy had been dismissed, and only three days after he and his wife failed to attend the status conference in their second state court action. (AER 006:18-20; AER 307:20-23 [¶ 67], 169:18-20 [¶ 3], 190–94.)

### D.   The Adversary Proceeding in Bankruptcy

On January 30, 2012, Benjamin Menjivar initiated the adversary proceeding that eventually became the subject of this appeal by removing the Menjivars' second state court action to the bankruptcy court pursuant to 28 U.S.C. § 1452(a). (AER 006:23-27; AER 169:18-20 [¶ 3], 193 [Dkt. No. 17], 308:3-4 [¶ 71].)

The very next day, the state court held its OSC regarding the Menjivars' failure to appear at the prior status conference on December 13, 2011. (AER 176.) Because the Menjivars failed to appear at the OSC, the Los Angeles Superior Court initially ordered: "Case is dismissed for plaintiff's failure to appear on 12-13-11 and on this date. Case is dismissed in its entirety with prejudice."  (*Id.*) The Menjivars' counsel appeared later that morning, however, and filed a "Notice of Removal of State Court Action to Bankruptcy Court." (*Id.*) In deference to what it thought was comity, the state court responded by vacating its prior order of dismissal with prejudice, and deemed the case removed to the bankruptcy court effective January 31, 2012. (*Id.*; SER 046:25–047:2.)

The adversary action languished for a number of months. The Menjivars had never served Wells Fargo with the original complaint in their second state court action during the year before its removal to the bankruptcy court (SER 104 [Dkt. Nos. 1 & 2][6]; SER 046:20-22) and this defect in service was similarly noted by the bankruptcy court in the adversary action on March 21, 2012. (SER 105 [Dkt. No. 3].)

### E.    The Motion to Dismiss the FAC in the Adversary Proceeding

The Menjivars eventually filed their FAC on July 31, 2012. (AER 295; SER 106 [Dkt. No. 12].) The FAC pled 18 different claims which were, to a large degree, inscrutable. (AER 295–330.)

For example, in a caption to the FAC, the Menjivars requested that the bankruptcy court declare their July 2007 Loan  "unenforceable" because the Note was not secured by the Deed of Trust. (*Id.*) But within the charging allegations of the FAC, the Menjivars instead sought: *(a)* "a declaration that the mortgage claim is disallowed as unenforceable" (AER 329:7-8 [¶ 2]); or alternatively, *(b)* "a declaration that the in personam note obligation is avoided as a fraudulent

---

[6]    The Menjivars have failed to include the trial court docket sheet in their AER. *Contra* 9TH CIR. R. 30-1.4(a)(ii) ("In all appeals, the excerpts of record shall include: … (ii) the trial court docket sheet[.]"). Wells Fargo has supplied the trial court docket sheet for the adversary action. (SER 102–112.) *See O'Rourke v. Seaboard Surety Co.(In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989) (the court may take judicial notice of bankruptcy case below).

obligation and that the mortgage claim is disallowed because the security interest is incident to the note" (*id.* at 329:9-12 [¶ 3]); or alternatively, *(c)* "a declaration … that where the in personam note obligation survives, the in rem deed of trust security interest in the subject real property is avoided as a fraudulent transfer and the mortgage claim is therefore an unsecured claim and is disallowed as untimely filed" (*id.* at 37:13-17 [¶ 4]).

Wells Fargo moved to dismiss the Menjivar's FAC on September 25, 2012. (AER 79, 134; SER 107 [Dkt No. 19].) The Menjivars filed a "general opposition" in response. (AER 150–67.) Wells Fargo filed a reply brief on October 16, 2012. (SER 108 [Adv. Dkt No. 24].)

Following the hearing on the motion to dismiss the FAC, (AER 007:22-23; AER 137–49), the bankruptcy court issued an order adopting its written tentative ruling, and dismissed the FAC without leave to amend. (AER 007:22-24; AER 130–36.)

The bankruptcy court identified a fundamental problem with the Menjivars' FAC and their entire action: "This is a Chapter 13 case and I'm not aware of a basis to discharge the personal liability but keep the property." (AER 141:3-5.) This observation was accurate. *E.g. Cortez v. American Wheel (In re Cortez)*, 191 B.R. 174, 177 (B.A.P. 9th Cir. Cal. 1995) ("It is well settled that valid, perfected liens and other secured interests pass through bankruptcy unaffected.") (citing

*Dewsnup v. Timm*, 502 U.S. 410, 418 (1992)).

The bankruptcy court further found that the Menjivars could not explain how they would amend their complaint to overcome its fatal deficiencies, including the statutes of limitations and HOLA preemption. (AER 130–136.)

## F. The Appeal Before the Ninth Circuit Bankruptcy Appellate Panel.

The Menjivars' appeal to the BAP followed on November 23, 2012. (AER 31 [BAP Dkt. No. 2].) Shortly afterwards, Wells Fargo's counsel discovered a typographical error in the order dismissing the FAC, which inadvertently stated that dismissal was without prejudice. (AER 131; SER 072.) On May 5, 2013, Wells Fargo filed an unopposed motion for a limited remand to seek correction of the bankruptcy court's dismissal order.  (SER 118 [Dkt. No. 34]; 070–082.) The BAP granted the motion on May 13, 2013. (AER 32 [Dkt. No. 34], 33 [Dkt. No. 36]; SER 009.)

On limited remand, counsel for Wells Fargo filed a June 13, 2013 motion to correct the order dismissing the FAC. The Menjivars unexpectedly opposed the motion on June 29, 2013. (SER 012–022, 110 [Dkt. No. 39], 111[Dkt. No. 46].) On July 8, 2013, the bankruptcy court issued a *nunc pro tunc* order effective as of November 7, 2012, providing that dismissal of the FAC was with prejudice. (SER 001-002, 111 [Dkt. No. 48].)

On September 19, 2013, Mr. Menjivar's Chapter 13 case was converted to a

-12-

Chapter 7 case (AER 008:19-20; AER 33 [Dkt. Nos. 46–48]) because he failed to make payments under his Chapter 13 plan. (SER 088–091, 093 [Dkt. Nos. 29, 36, 41, 46, 53].)

On January 28, 2014, the BAP ruled that the bankruptcy court's order dismissing the adversary proceeding should be affirmed on multiple grounds. (AER 001–024, 033–034 [Dkt. Nos. 54–57].) It observed: "[n]one of the Menjivars' allegations stated a claim for relief plausible on its face. Nor were there any amendments consistent with the Menjivars' existing allegations that would have cured the fatal deficiencies in their first amended complaint ("FAC")". (AER 002:8-11.)

The BAP rejected the Menjivars' argument that the bankruptcy court should have explicitly set forth further reasons why it had not granted leave to amend (AER 012:10-13), noting that according to Ninth Circuit precedent such an order should be upheld if its basis is apparent from the entire record. (AER 012:17-22.)

The BAP further noted that the Menjivars' failure to offer a proposed second amended complaint was a significant problem since a reviewing court is only "required to take into account hypothetical amended pleadings containing facts consistent with those already alleged." (AER 012:17-22.)

The BAP found that most of the Menjivars' claims explicitly relied on California's version of the Uniform Fraudulent Transfer Act (UFTA) codified at

-13-

California Civil Code sections 3439 to 3439.12. (AER 014:7-28.) Included within these UFTA claims were allegations that Wells Fargo misrepresented the terms of the 2007 loans, overcharged for settlement fees, and extended credit to the Menjivars under terms that the Menjivars considered unfavorable and that rendered them unable to meet their personal financial goals. (AER 015:1-8.) The BAP held that these UFTA claims were preempted by HOLA regulations governing terms of credit, loan related fees, and disclosure and advertising. (AER 015:7-28–016:24-26, citing 12 C.F.R. § 560.2(b)(4), (5), (9).)

Apart from preemption by HOLA, the BAP further found the UFTA allegations were otherwise non-actionable. A plaintiff is required under UFTA to plead that a transferor actually intended to hinder, delay, or defraud creditors. But in their FAC, the Menjivars did not include any of these necessary allegations. (AER 016:19-22.) Also, no claim for constructive fraudulent transfer was stated since the 2007 refinancing was supported by reasonably equivalent value in the form of the satisfaction of an antecedent debt (*i.e.* the prior loan obligation). (AER 017:26–018:9.)

Similarly, the BAP found the Loan to be supported by sufficient consideration, and rejected the Menjivars' allegations to the contrary. Paying off their antecedent debt with the 2007 refinancing had plainly conferred a substantial and valid legal benefit on the Menjivars. (AER 018:16-26.)

-14-

The BAP held that the fraud allegations were time-barred under California Code of Civil Procedure section 338(d) because the three-year statute of limitations period had begun to run when the Menjivars entered into the 2007 Loan. (AER 018:27–019:4.) The Menjivars did not commence their action until after the three-year limitations deadline had passed. (AER 019:3-4.)

The Menjivars offered only one argument to the BAP regarding the statute of limitations for fraud. (AER 019:5-6.) They asserted that their fraud contentions "are governed by California's four-year limitations period covering claims based on contract…and not based on California's three-year limitations period covering claims based on fraud." (AER 019:6-10.)

The BAP found this contention to be "specious" because the Menjivars' allegations "sound in fraud and not in contract." (AER 019:11-14.) This ruling was beyond any reasonable dispute, given that the Menjivars have consistently acknowledged that their fraud claim against Wells Fargo stems from alleged misrepresentations regarding the rate of interest under their July 2007 Loan. (*E.g.* AOB 8, citing AER 303:18-26.) *Ferguson v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-00328-KJM-KJN, 2014 U.S. Dist. LEXIS 70013, at *14-16 (E.D. Cal. May 20, 2014) (3-year statute of limitations applies where the "gravamen" of a claim is fraud); *Dang v. First Horizon Home Loan Corp.*, No.12cv0343 JAH (NLS), 2013 U.S. Dist. LEXIS 119669, at *8, 11-12 (S.D. Cal. Aug. 22, 2013)

(same); *Chikosi v. Gallagher*, No. 13-56031, 2015 U.S. App. LEXIS 13308, at *2-3 (9th Cir. July 30, 2015) (3-year fraud statute of limitations applied to allegations grounded in fraud) (citing *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1110 (1990) (the 3-year statute of limitations in California Code of Civil Procedure § 338(d) "is comprehensive and applies 'if fraud or mistake is the basis of the legal injury (the 'ground' of the action)...regardless of whether the complaint seeks legal or equitable relief or pleads a cause of action in tort or contract.'") (citations omitted)).

Although the Menjivars argued in their reply that the limitations period was tolled by delayed discovery, the BAP found this argument to have been forfeited, as it was not made by the Menjivars to the bankruptcy court nor in their opening brief. (AER 019:19-26.) And even if California's discovery rule had applied, the FAC and its exhibits revealed the Menjivars had sufficient information about the terms of their 2007 Loan from its outset. (AER 020:1-8.)

The TILA, FHA, and ECOA claims were also time-barred. Arising out of the origination of the 2007 Loan, these claims were barred by the 1-year statute of limitations for TILA damages and the 3-year statute for TILA rescission. (AER 020:15–021:4.) The FHA's and ECOA's 2-year statutes of limitations had also passed. (AER 020:20–21:4.) The Menjivars' argument that the discovery rule extended the limitations period for their TILA claims, made for the first time in

their reply brief, was rejected for the same reasons applicable to their claims for fraud. (AER 021:5–22:4.) It was further noted that the discovery rule does not apply to FHA and ECOA claims, and was additionally forfeited on appeal since the discovery rule was first raised by the Menjivars in their reply brief. (AER 022:5-12.)

The BAP found the remainder of the claims in the FAC were subject to dismissal since they were merely derivative of other claims already demonstrated to be non-actionable. (AER 022:18-22.)

The Menjivars appealed from the BAP's decision to this Court on February 27, 2014. (AER 025–027.) On July 16, 2014, Mr. Menjivar received a discharge order in his Chapter 7 bankruptcy. (SER 010–011.)

The Opening Brief filed by the Menjivars in this appeal raises no challenge to several of the BAP's rulings. These unchallenged rulings include:

- the inapplicability of California's discovery rule;

- the non-viability of the UFTA claims;

- the inapplicability of the California Code of Civil Procedure § 337(1) limitations period (this statute is cited twice in passing, but is not the subject of any argument) (AOB 2, 17);

-17-

- HOLA preemption of the UFTA claims under 12 C.F.R. § 560.2(b)(4), (5), (9) (the Menjivars instead argue that Wells Fargo has no standing to assert this HOLA preemption);

- the sufficiency of the consideration for the Loan (aside from a stray remark made outside of legal argument) (AOB 16);

- that federal statutes of limitations govern TILA, FHA, and the ECOA;

- the dismissal of claims that are merely derivative of the Menjivars' non-actionable primary claims.

## V.  STANDARD OF REVIEW

This Court reviews "decisions of the BAP de novo and appl[ies] the standard of review applied by the BAP to the bankruptcy court's decision." *Retz v. Samson (In re Retz)*, 606 F.3d 1189 (2010). Questions of law decided by a bankruptcy court are reviewed de novo, while factual findings are reviewed for clear error. *In re Meruelo*, 667 F.3d at 1076.

The dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo, while the decision to dismiss *with* prejudice is reviewed for abuse of discretion. *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012) (internal & external citations omitted). Dismissal without leave to amend is proper if amendment would be futile. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

892 (9th Cir. 2010). In determining whether an amendment would be futile or would instead cure an existing deficiency, a court should only consider "other facts consistent with the challenged pleading." *Swartz v KPMG LLP,* 476 F.3d 756, 761 (9th Cir. 2007.) A court's discretion to dismiss without leave to amend is particularly broad where the plaintiff has previously amended the complaint. *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013).

The appellate court may affirm the dismissal on any ground supported by the record. *United States v. Washington*, 573 F.3d 701, 706 (9th Cir. 2009). It is the appellant's burden to show reversible error. *Independent Towers of Wash. v. Washington,* 350 F.3d 925, 930 (9th Cir. 2003).

## VI. SUMMARY OF ARGUMENT

The Menjivars seek in this appeal to introduce entirely new claims for rescission under California Civil Code section 1689(b), and to apply a longer but inapplicable time bar under Code of Civil Procedure section 337(3) to rescue their moribund claims. They also say for the first time that they have alleged a viable state UCL claim. By asserting these new claims that were never pleaded or otherwise raised below, the Menjivars now attempt to evade the limitations periods that apply to the claims that they actually did raise and advance in the BAP.

-19-

Yet it is too late for the Menjivars to allege new facts or theories. Their failure to allege rescission or UCL violations in any of the proceedings below forfeited those claims. Regardless, rescission cannot be had if there is no contract to rescind, and the Menjivars have continually asserted that no contract existed between them and Wells Fargo. A claim for rescission (and the four-year statute of limitations applicable to a rescission claim) is therefore unavailable to them.

California law also required them to tender back all benefits received under the allegedly nonexistent contract in order to state a claim for rescission. The Menjivars have never alleged tender of the Loan proceeds to Wells Fargo, and are incapable of doing so. Not only does the FAC fail to allege a restoration to Wells Fargo of the benefits they received under the Loan, but it also fails to allege either notice of rescission or an express request for rescission.

The applicable three-year statute of limitations continues to render their fraud allegations unactionable. Cal. Code Civ. Proc. § 338(d). Other limitations periods under federal law apply to their claims for alleged violations of the Fair Housing Act (FHA), the Truth in Lending Act (TILA), and the Equal Credit Opportunity Act (ECOA). The argument advanced by the Menjivars that the longer 4-year period under California Civil Code section 1689(b) should instead apply to these federal claims is baseless.

-20-

Their discussion of HOLA preemption does not permit any meaningful review of this issue after they failed to provide any analysis of the three lines of authority concerning the application of federal preemption, or to distinguish their origination claims which directly involved a federal savings bank.

The bankruptcy court's dismissal of their claims was unassailably correct, and the Ninth Circuit Bankruptcy Appellate Panel's decision should be affirmed on appeal.

## VII. ARGUMENT AND LEGAL ANALYSIS

**A.** **The Menjivars never pleaded or asserted a state law claim for rescission in the proceedings below. Any claim for rescission was waived.**

1. *For the first time on appeal, the Menjivars attempt to assert a rescission claim under California Civil Code section 1689(b). This is also the first time that they contend that a longer limitations period under California Code of Civil Procedure section 337(3) applies to their moribund claims.*

For the very first time, the Menjivars have sought in this appeal to raise previously unmentioned state law claims for rescission of contract based on alleged fraud and illegality (Cal. Code Civ. Proc. § 337(3) and Cal. Civ. Code §1689(b)). Their purpose is to seek to claim the benefit of the four-year statute of limitations applicable to state law rescission claims.

Yet an appeal is not an opportunity to argue "a different case than the one

-21-

decided by the [lower court].") *Baccei*, 632 F.3d at 1149. See also, *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d at 581 ("Our inquiry [on appeal] is limited to the content of the complaint."); *Cold Mt. v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004) (refusing to address "hitherto unaired" new claim on appeal); *Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 197-98 (9th Cir. 1995) (declining to consider cause of action not pled in complaint); *Elias*, 921 F.2d at 874 (new or different facts from those in the record are not considered on appeal).

None of the factual allegations presented by the Menjivars in their FAC provide any basis for raising a new theory of state law rescission on appeal from the rulings by the bankruptcy court and BAP. The Menjivars are bound by the facts which they actually pled. In their Opening Brief (AOB), they point to a single sentence from their FAC ("Plaintiffs request the court's determination that the Debtor may avoid the note as an actually or constructively fraudulent obligation and to disallow the claim in full because the deed of trust is incident to the note" (AOB7, citing AER 297:26-298:2)) and suggest that it might be characterized as a claim for rescission. But this sentence is actually a straightforward request for a judicial declaration. It alleges no operative facts (and none appear anywhere else in the FAC) that would lend any support to a state law rescission claim.

As with all civil appeals to this Court, claims, issues, and arguments not raised in proceedings below are waived on appeal. *Burnett v. Resurgent Capital Servs*.

-22-

*(In re Burnett)*, 435 F.3d 971, 976-77 (9th Cir. 2006) ("The Burnetts failed to make their current arguments to the BAP and now ask us to reach issues presented for the first time on appeal. We decline to do so."); *Office of the United States Trustee v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong)*, 104 F.3d 1147, 1148 (9th Cir. 1997) ("[O]ur case law on the preservation of issues from a district court's judgment also controls appeals from bankruptcy proceedings."); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991) ("It is well established that an appellate court will not reverse …on the basis of a theory that was not raised below."); *United States v. Munoz*, 746 F.2d 1389, 550 (9th Cir. 1984) (refusing to consider a tort theory not raised in contract action below).

The Menjivars' sudden desire to introduce state law rescission claims on appeal would, if fulfilled, deprive Wells Fargo of its right to fair notice of the claims against it. "Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights". *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983). Eight years have passed since the events upon which the Menjivars now seek to base claims for rescission took place. The four-year limitations period applicable to state law rescission claims expired long ago.

"Statutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is

unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (quotations and citation omitted).

Statutes of limitations require plaintiffs to pursue "diligent prosecution of known claims." *CTS Corp. v. Waldberger*, 134 S. Ct. 2175, 2183 (2014) (citation omitted). They "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id*. (citing *Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U. S. 342, 348-49 (1944)).

While before the BAP, the Menjivars never suggested that they wished to assert any state law rescission claims. They instead argued that their "contentions are governed by California's four-year limitations period covering claims based on contract, *see* Cal. Civ. Code § 337(1), and not based on California's three-year limitations period covering claims based on fraud. *See* Cal. Civ. Code § 338(d)." (AER 19:5-11.) But this argument failed. As a result, the Menjivars have changed course from their BAP appeal and are now insisting that their allegations of fraud should be viewed not as a claim for breach of contract, but rather as a claim for rescission of contract.

-24-

Under circumstances such as these, the applicability of waiver is particularly appropriate. *Jimenez v. Franklin*, 680 F.3d 1096, 1099-1100 (9th Cir. 2012) (refusing to consider issue party did not raise in prior appeal); *Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982) ("We need not and do not consider a new contention that could have been but was not raised on the prior appeal.").

In their Opening Brief, the Menjivars assert that the "FAC makes clear the Menjvars' theory of liability: the Wells Fargo loan is the product of fraud and illegal conduct and should be rescinded." (AOB 6.) But again, the sole support they offer for this contention is the single sentence from their FAC examined above: "Plaintiffs request the court's determination that the Debtor may avoid the note as an actually or constructively fraudulent obligation and to disallow the claim in full because the deed of trust is incident to the note." (AOB 7, citing AER 297:26-298:2.)

No operative facts are alleged in this sentence which might support a state law rescission claim. There is no mention here (or anywhere else in the FAC) of California Code of Civil Procedure § 337(3) or California Civil Code § 1689(b). The word "rescission" is nowhere to be found, either in the quoted sentence or in the FAC as a whole.

When the Menjivars opposed Wells Fargo's motion to dismiss before the bankruptcy court, they declined to take that opportunity to raise any state law

-25-

rescission claims. Instead, in their opposition to the motion, the Menjivars baldly stated: "Assuming arguendo that the Defendant wriggles out of its liability under these claims for relief on a technicality like statute of limitations, the note cannot survive the two-pronged strong-arm attack of Claim for Relief 7 under § 544(b)(1) that the note was [a fraudulent transfer]." (AER 230:24–241:3.)

This attempt by the Menjivars to denigrate statutes of limitation as a mere "technicality" is far off the mark. Limitations periods in actuality represent an "enlightened", "pervasive legislative judgment" promoting fundamental rights to justice and fair notice in legal proceedings. *Kubrick*, 444 U.S. at 117.

Finally,  the Menjivars argue that their failure to raise a claim for rescission in the proceedings below should not be considered a waiver, due to a discretionary waiver exception which applies "when the issue presented is purely one of law and … does not depend on the factual record developed below. . . ." (AOB 38, citing *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir. 1985).) That exception is not on point here. A claim for rescission must be based upon pertinent allegations of fact (which are entirely missing from the FAC) and not upon conclusory contentions of law.

Moreover, as noted in *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) ("the party against whom the [exception to waiver] is raised must not be prejudiced by it."). Wells Fargo would be seriously prejudiced if it were compelled

-26-

to now defend against rescission claims never before alleged in legal proceedings which now stretch back five years.

Wells Fargo would have effectively challenged these claims had they been raised earlier, and it would be "manifestly unfair and an abuse of the appellate process" for there to be an exception to waiver under the present circumstances. *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir. 2004).

> **2.    *Even if the Menjivars had previously attempted to plead claims for rescission under state law, those claims would fail due to their inability to allege either notice of rescission or a tender of restoration of the Loan funds to Wells Fargo — essential elements for a rescission claim.***

Had the Menjivars truly sought to allege a claim for rescission under state law, they would have had to plead, at minimum, notice of rescission and an offer to restore to Wells Fargo everything of value received from the Loan. The absence from the FAC of these essential allegations of tender is confirmation of the waiver and forfeiture by the Menjivars of any claim for rescission, due to their failure to raise it below.

Cal. Civil Code § 1691(a) provides: "to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind… [g]ive notice of rescission to the party as to whom he rescinds."

The party seeking rescission must also "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." Cal. Civil Code § 1691(b). *See also*, *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.*, 50 Cal. 4th 913, 921 (2010) (Rescission requires that the aggrieved party provide the other party to the agreement with " prompt notice" and an "offer to restore the consideration received, if any."); *see also Touli v. Santa Cruz County Title Co.*, 20 Cal. App. 2d 495, 499-500 (1937) ("one is not entitled to relief in a court of equity who refuses to do equity on his part"; court held one cannot rescind a contract without restoring everything of value he received).

Alternatively, a pleading may expressly allege rescission. Cal. Civ. Code § 1691. This is deemed by law to qualify as notice of a rescission and an offer to restore benefits. *Id*. Nothing in the FAC reveals any attempt by the Menjivars to take this second approach.

The FAC lacks a cause of action for rescission, and otherwise makes no mention of rescission. The prayer of the FAC is limited to a request for injunctive relief, declaratory relief, compensatory damages, statutory damages, punitive damages, and litigation expenses. (AER 329:5–330:16.) These allegations of the FAC are properly regarded as judicial admissions, binding upon the Menjivars in

-28-

the lower courts and on appeal. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

The further absence of any allegations of tender, along with indications that no such allegations could be made, is also fatal to a rescission claim. Tender under Cal. Civ. Code § 1691 must be pled in order for a rescission claim to be viable. *Farahani v. Floria*, No.: 12-CV-04637-LHK, 2013 U.S. Dist. LEXIS 56679, at *34 (N.D. Cal. Apr. 19, 2013) ("To the extent that Plaintiff seeks equitable relief, he cannot do so without pleading the ability to 'tender' the amount owed to Defendant Floria.") (citing Cal. Civ. Code § 1691(b)); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 880 (N.D. Cal. 2010) (interpreting Cal. Civ. Code § 1691 and stating "courts in California continually treat tender or at least the allegation of ability to do so as a necessary part of a valid claim for rescission of a contract.") (collecting cases).

In their Opening Brief, the Menjivars display a realization not only that their FAC fails to include the essential allegation of tender in support of rescission, but that they have no basis or ability to make such an allegation. They therefore cite *Onofrio v. Rice* and argue that tender need not be alleged in support of rescission if this would be "inequitable" or if "the action attacks the validity of the underlying debt." 55 Cal. App. 4th 413, 424 (1997).

-29-

But in *Kramer v. Bank of Am., N.A.*, No. 1:13-CV-01499-AWI-MJS, 2014 U.S. Dist. LEXIS 54252, at \*20-21 (E.D. Cal. Apr. 17, 2014), the court purposefully distinguished *Onofrio* by noting its holding is limited to the unique facts of that case—the borrower obtained a loan from a foreclosure consultant who wound up buying the relevant property at the foreclosure sale.

No similar facts exist here. The Menjivars' claim that the Loan was invalid is time-barred under California Code of Civil Procedure section 338(d)'s three-year statute of limitations for fraud. It would now be grossly inequitable to disregard the requirement of tender to support a claim for rescission (assuming such a claim were ever alleged), since the Menjivars first defaulted on the Loan years ago, prior to engaging in multiple legal strategies to delay foreclosure for as long as possible.

The Menjivars also cite *Merritt v. Countrywide Financia Corp.*, 759 F.3d 1023, 1032 (9th Cir. 2014), but that case involved a claim for rescission brought under TILA, where tender could be resolved after the pleading stage. *Davenport* notes that this exception would not apply to a state law rescission claim, since tender is a pleading requirement under California rescission law. 725 F. Supp. 2d at 879-80.

Thus, the Menjivars' false insistence that there is "no tender" requirement for rescission under California law is in essence a concession that they never attempted to plead tender in the first place and that they are unable to do so. (AOB

2, 19, 33.) *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (relying on

concessions made by a party in reviewing ruling on motion to dismiss).

**B.** **The 3-year statute of limitations provided under California Code of Civil Procedure section 338(d) applies to the Menjivars' allegations of fraud. Those allegations are untimely because their initial complaint in January 2011, more than three years after loan origination in July 2007.**

The core factual allegation made by the Menjivars is quite straightforward,

although perhaps easily lost in the FAC's prolixity. Their sprawling pleading

eventually narrows to one simple, but time-barred point: "In July 2007, Plaintiffs

agreed to what they believed was a fixed-rate mortgage. But they were deceived by

WORLD SAVINGS; it was not a fixed rate." (AER 303:24-26 [¶ 36].) "Deceit," as

alleged here, is a species of fraud defined by statute under California law. Cal. Civ.

Code §§ 1709–1710.

It is unnecessary to look beyond the first page of the Menjivars' "Adjustable

Rate Mortgage Note" (AER 251) to see the inherent defects in their claim of fraud.

There, Paragraph 2.(B) states as follows: "Interest Change Dates [¶] The interest

rate I will pay may change on the 15th day of September, 2007 and on the same

day every month thereafter. Each date on which my interest rate could change is

called an 'Interest Change Date[.]' The new rate of interest will become effective

on each Interest Change Date[.]" (*Id.*)

The  Adjustable Rate Note and Deed of Trust were executed by the Menjivars

-31-

in July 2007. Their allegations of fraud arising from the stated interest rate in these documents began to accrue at that time. (AER 251 & 256; 260 & 274–76.) But they did not commence this action until January 18, 2011. The three-year limitations period applicable to their allegations of fraud had therefore expired well before suit was filed. Cal. Code Civ. Proc. § 338(d). Thus, the BAP correctly concluded that the fraud claim was untimely. (AER 18–19.)

In their earlier BAP appeal, the Menjivars tried to dodge the three-year limitations period applicable to their fraud claim by maintaining that claim is actually one for breach of a written contract. But their effort to transmute a fraud claim into a claim for breach of contract could not survive the Menjivars' own contention that a loan contract was "not formed" between them and Wells Fargo. (AER 311:1–313:7.) This contention has now been reaffirmed in their Opening Brief in this appeal, where they acknowledge that: "The Menjivars alleged that no contract was formed". (AOB 24–25.)

The BAP was therefore correct in concluding that the "Menjivars' allegations that they were fraudulently induced to execute the 2007 notes and trust deeds sound in fraud and not in contract." (AER 19:11-16.) That ruling is consistent with *Ferguson*, 2014 U.S. Dist. LEXIS 70013, at *14-16 (E.D. Cal. May 20, 2014) (3-year statute of limitations applies where the "gravamen" of a claim is fraud); *First Horizon Home Loan Corp.*, 2013 U.S. Dist. LEXIS 119669, at *8, 11-12; *Chikosi*,

2015 U.S. App. LEXIS 13308, at *2-3 (3-year fraud statute of limitations applied to allegations grounded in fraud) (citing *Hatch*, 225 Cal. App. 3d at 1110 (the 3-year statute of limitations in California Code of Civil Procedure section 338(d) "applies 'if fraud or mistake is the basis of the legal injury …regardless of whether the complaint seeks legal or equitable relief or pleads a cause of action in tort or contract.'") (citations omitted)).

The Menjivars have abandoned their earlier position that their fraud claim sounds in contract, and are now arguing that what they were really trying to allege all along was rescission. In determining rescission is available, however, the distinction must be drawn between a contract that has been formed but is tainted by fraud (Cal. Code Civ. Proc. §§ 1565, 1567), and a contract that was never formed.

Where a contract has been formed, rescission will be potentially available. Cal. Civ. Code §§ 1566, 1689(b) (the person seeking rescission must be a "party to a contract"); Cal. Code Civ. Proc. 337(3) (rescission requires a "contract"). On the other hand, if a contract has not been formed, damages are the only available remedy for fraud. Cal. Civ. Code §§ 1709, 1710; *Charles Brown & Sons v. White Lunch Co.*, 92 Cal. App. 457, 461 (1928) ("Only a valid and binding contract may be rescinded.").

In *Chakmak v. H. J. Lucas Masonry, Inc.*, the court discussed the availability of rescission for fraud where "the parties did not agree upon the same thing in the

same sense". 55 Cal. App. 3d 124, 129 (1976). In contrast, where there has been a complete lack of mutual consent to contract terms (as the Menjivars are claiming here), rescission is unavailable since no contract exists to be rescinded. *Id*.

*Charles Brown & Sons* found that rescission "is not properly applicable to the undoing of anything except that which has been the subject of mutual agreement." 92 Cal. App. at 461. The court noted "a contract requires the assent of at least two minds to each and all of the essentials of the agreement". *Id*. at 462.

Case law has addressed circumstances of alleged fraudulent inducement to contract similar to those alleged by the Menjivars in their FAC. Rulings have issued that the statute of limitations for fraud rather than for rescission of contract should apply.

 *Rosenfeld v. JPMorgan Chase Bank, N.A.* held the three-year statute of limitations under Code of Civil Procedure section 338(d) governed allegations that the defendants had knowingly made false representations that the terms of the loan procured for the plaintiff were the best available, that it was a fixed-rate loan, and that the loan payments would not increase. 732 F. Supp. 2d 952, 970-72 (N.D. Cal 2010). Since more than three years had passed between the consummation of the loan and the filing of the action, the allegations were time-barred. *Id*. at 971.

The court in *First Horizon Home Loan Corp.* held the 3-year statute of limitations under Code of Civil Procedure section 338(d) applied to allegations of

fraudulent misrepresentations and inducement that occurred at loan origination, and was attributable to the original lending documents. 2013 U.S. Dist. LEXIS 119669, at *7-8, 11-12.

In *Ferguson v. JPMorgan Chase Bank, N.A.*, the court applied the three-year statute of limitations for fraud even though the claim was labeled as one for promissory estoppel. The court noted the basis of the action was that defendant "fraudulently induced [plaintiffs] to participate in [a] modification process instead of seeking other alternatives[.]" 2014 U.S. Dist. LEXIS 70013, at *15-16 (E.D. Cal.)

By contrast, in a case where there was no dispute that a stock valuation had been specified within a valid agreement but the valuation amount itself was alleged to have been fraudulently determined, the California Supreme Court held the four-year statute of limitations for rescission should apply. *Miller v. Bechtel Corp.*, 33 Cal. 3d 868 (1983).

Thus, the BAP correctly analogized this matter to cases where damages are sought for fraud rather than to cases seeking rescission of contract, since the Menjivars are arguing no contract was ever formed for a Loan with an adjustable rate: "Under similar circumstances, the Ninth Circuit did not hesitate to apply a three-year limitations period applicable to fraud claims." (AER 19:14-18), citing

*Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013); *Rosenfeld*, 732 F. Supp. 2d at 971.

*Peterson v. Highland Music*, 140 F.3d 1313, 1320 (9th Cir. 1998), a case cited by the Menjivars in their Opening Brief, does not change the result on the statute of limitations. That case involved a rescission claim based on alleged breaches of contract, not fraud. The Menjivars do not submit there was a contractual breach by Wells Fargo. To the contrary, they claim there was no contract.

The doctrine of delayed discovery does not apply to toll the running of the statute of limitations in this case. Before the BAP, the Menjivars argued for delayed discovery with respect to their alleged "contractual" claim. But the BAP rejected this argument, concluding that the Menjivars "improperly raised this for the first in their reply brief", thus "forfeiting this argument". (AER 19:19-26.)

The BAP's ruling is supported by ample authority: *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); *Alaska Ctr. for the Env't v. United States Forest Serv.*, 189 F.3d 851, 858 n. 4 (9th Cir. 1999) ("[An] argument was raised for the first time in ACE's reply brief. Arguments not raised in opening brief are waived."); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

Waiver of delayed discovery applies equally here. The Menjivars have not argued delayed discovery in their Opening Brief. The Ninth Circuit, like other circuit courts, has repeatedly held that an issue will only be considered on appeal if it has been "specifically and distinctly argued in appellant's opening brief." *Christian Legal Soc'y Chap. of Univ. of Cal. v. Wu*, 626 F.3d, 483, 487–88 (9th Cir. 2010), (quotation omitted), *accord United States v. Dunkel*, 927 F.2d, 955, 956 (7th Cir. 1991); *Greenwood v. FAA* 28 F.3d 971, 977 (9th Cir. 1994).

### C. Any "declaratory relief" based on fraud is non-actionable.

Giving the Menjivars the benefit of every doubt in construing the FAC, its allegations could possibly be understood to seek declaratory relief based on fraud since it makes several requests for "declarations" from the bankruptcy court. (AER 329:7-8 [¶ 2], 329:9-12 [¶ 3], 37:13-17 [¶ 4].) Yet this too raises the applicability of waiver (or forfeiture) since the Menjivars have offered no arguments regarding declaratory relief in their Opening Brief. *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995) (a claim not raised in the opening brief but in proceedings below is deemed abandoned); *Farmer v. McDaniel*, 666 F.3d 1228, 1233 (9th Cir. 2012) ("This Court 'review[s] only issues which are argued specifically and distinctly in a party's opening brief.'").

A claim for declaratory relief derivative of alleged fraud would moreover be time-barred. Federal courts borrow from the underlying substantive claim when

determining the statute of limitations for a predicate claim of declaratory relief.

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688–689 (9th Cir. 1993) (statute

of limitations for declaratory relief is the same as for the underlying substantive

claim); *Manantan v. Nat'l City Mortg.*, 2011 U.S. Dist. LEXIS 82668, at *19–20

(N.D. Cal. July 28, 2011) (declaratory relief based on fraud has a 3-year statute of

limitations), citing *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125,

1155 (1991) ("[T]he statute of limitations governing a request for declaratory relief

is the one applicable to an ordinary legal or equitable action based on the same

claim.").

### D. No UCL claim has been alleged in the FAC, and the opportunity allege a UCL claim was long ago forfeited.

#### 1. *The UCL has been waived due to the Menjivars' failure to raise this statutory claim in any earlier proceedings.*

Similar to the Menjivars' purported claims for rescission, a claim under the

UCL has also been waived. The Menjivars are limited to the legal theories and

facts they actually pled below. They may not now freely assert on appeal

additional claims. *North Star Int'l*, 720 F.2d at 581; *Cold Mtn.*, 375 F.3d at 891;

*Brazil*, 66 F.3d at 197–198. It is indisputable that a UCL claim cannot be located

anywhere within the pleadings, no matter how they are construed. The UCL was

never raised by the Menjivars before the bankruptcy court or in their BAP appeal.

-38-

The potential for a UCL claim has never been identified by them prior to their Opening Brief in this appeal.

The FAC alleges that, by reason of fraud, a loan contract was "not formed." But this was not pled as a UCL claim. (AER 311:1–313:7.) The Menjivars made vague arguments in the BAP appeal unrelated to the UCL, such as that their claims are similar to those "involving breach of implied promises and negligent performance of contract". (AER 126–127.) Yet these arguments were no substitute for an actual claim.

The potential for serious violations of fair notice to Wells Fargo is raised by the Menjivars' attempt to introduce a brand new UCL claim in this appeal in order to claim a different statute of limitations than previously argued. Wells Fargo will be clearly prejudiced if this claim is not found to have been waived. *Parker*, 462 U.S. at 352; *Kubrick*, 444 U.S. at 117; *Patrin*, 575 F.2d at 712.

## 2. *A UCL claim has also been waived due to the dearth of any supporting arguments in the Opening Brief.*

There is scant argument offered in the Opening Brief regarding the UCL. This presents a further reason why a waiver should be found. In their Opening Brief, after referencing broad UCL principles, the Menjivars offer a few sentences in which they argue that an unpled claim of UCL fraud should be considered: "The Menjivars allege fraud, which is deceptive conduct barred by the UCL." (AOB 31); "Fraud also violates two California statutes, Civil Code §§ 1709 and 1710."

-39-

(*id*.); "Thus, a fraud claim describes illegal conduct prohibited by the UCL." (*id*.).
Otherwise, the Menjivars do not point to any other grounds for finding a UCL
claim to have been adequately raised.

The Menjivars thus fail to satisfy this Circuit's requirements for avoidance of
waiver. They neither present adequate legal argument in the Opening Brief, nor
offer reasonable support for their contentions that a UCL claim should be found to
exist. "We review only issues which are argued specifically and distinctly in a
party's opening brief. We will not manufacture arguments for an appellant, and a
bare assertion does not preserve a claim, particularly when, as here, a host of other
issues are presented for review." *Greenwood*, 28 F.3d at 977; *accord*, *Brownfield v.
City of Yakima,* 612 F.3d 1140, 1149 (9th Cir. 2010); *Christian Legal Soc'y
Chapter of Univ. of Cal. v. Wu,* 626 F.3d 483, 487 (9th Cir. 2010). *See also
Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008)
("It is well-established that a bare assertion in an appellate brief, with no
supporting argument, is insufficient to preserve a claim on appeal."); *Western
Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012) ("We will not
do an appellant's work for it, either by manufacturing its legal arguments or by
combing the record on its behalf for factual support."); *Dunkel*, 927 F.2d at 956
("A skeletal 'argument', really nothing more than an assertion, does not preserve a
claim.").

### 3. *The Menjivars do not demonstrate an actionable UCL claim.*

The factual allegations in the FAC plainly do not support a UCL claim. The fraudulent prong of the UCL requires a plaintiff to "show that members of the public are likely to be deceived" by a challenged business practice. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (internal quotation marks omitted). A plaintiff must also satisfy the heightened pleading standards of F.R.C.P. 9(b) to state a claim for UCL fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To survive dismissal, this requires pleading with particularity the who, what, where, when, and how as to the misconduct charged. *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12cv1873-IEG (MDD), 2013 U.S. Dist. LEXIS 66498, at *22–23 (S.D. Cal. May 8, 2013); *Neu v. Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 U.S. Dist. LEXIS 32844, at *13–14 (N.D. Cal. Apr. 8, 2008). Vague or conclusory allegations are insufficient to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Moreover, strict pleading requirements particularly apply where a business entity, such as Wells Fargo, is accused of fraud. The state court in *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153 (1991), explained:

> The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom

they spoke, what they said or wrote, and when it was said or written.

*Id*. at 157; *see also Lazar v Superior Court*, 12 Cal.4th 631, 645 (1996) (same).

The Menjivars' FAC falls considerably short of meeting these specificity requirements. The ground for UCL fraud would ostensibly be the allegation from the FAC that the plaintiffs believed "they were getting a fixed interest rate" for the Loan because of what someone at Wells Fargo "told" them. (AER 312:3-5.) The FAC also fails to allege who made the alleged statements about the fixed interest rate, when the persons made them, and their authority to speak. (AER 312:3-5.)

While the FAC vaguely refers to a "document" and allegedly quotes language from it regarding the interest rate for the Loan, no specifics are provided regarding who sent it, when they sent it, or their authority to communicate on behalf of Wells Fargo. (AER 312:5-27.)

The Menjivars also do not explain how there could be a likelihood of deception about a fixed rate of interest when an adjustable interest rate was plainly set forth in the Loan documents. (AER 251.) The Menjivars are bound by the Loan terms even if they chose not to read them. *Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996) ("A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it."); *Rosenfeld*, 732 F.Supp.2d at 965 (a plaintiff "has a duty to read the terms of a contract before signing.").

-42-

The amended pleading is also devoid of facts showing that Wells Fargo caused any actual loss to the Menjivars. These factual allegations would be essential to any UCL claim. *Bower v. AT&T Mobility*, LLC, 196 Cal.App.4th 1545, 1554 (2011). Yet it is more than apparent from the FAC that the Menjivars did not suffer an actual loss because of Wells Fargo, but rather solely as a result of their default on the 2007 Loan.

In *Jenkins v. JP Morgan Chase Bank, N.A.*, the court held that a borrower did not have standing to bring a claim for violation of UCL because her own default — not the defendant's alleged unfair business practices — subjected her property to nonjudicial foreclosure and caused her monetary losses. *Jenkins*, 216 Cal. App. 4th 497, 520 (2013).

In *DeLeon v. Wells Fargo Bank, N.A.*, the court held no UCL claim was stated by allegations that Wells Fargo had made certain alleged misrepresentations, since it was apparent "the plaintiffs lost their home" as a result of being "unable to keep up with [their] monthly payments." *DeLeon*, 2011 U.S. Dist. LEXIS 8296, at *19–22 (N.D. Cal. 2011).

**E. The Menjivars have never sought leave to amend in order to assert a state law rescission or UCL claim. Their failure to do so constitutes a further ground for affirming the rulings by the bankruptcy court and the BAP.**

The Menjivars failed to attempt to obtain leave from the bankruptcy court pursuant to Federal Rule of Civil Procedure 15(a)(2) to bring new rescission and

UCL claims in an amended complaint, and they failed to show the BAP how their FAC could be amended to state either one of these new theories raised on this appeal. *Ketab Corp. v. Mesriani Law Group*, No. 2:14-cv-07241-RSWL (MRW), 2015 U.S. Dist. LEXIS 58880, at *8–9 (C.D. Cal. May 5, 2015); *see also Sanchez v. Superior Court of Cal. San Diego N. County Div.*, No. 10-cv-0218 BEN (WVG), 2010 U.S. Dist. LEXIS 90606, at *15-16 (S.D. Cal. Aug. 30, 2010); *Brown v. U.S. Bancorp*, No. CV 11-6125 CAS (PJWx), 2012 U.S. Dist. LEXIS 26226, at *17 (C.D. Cal. Feb. 27, 2012). They never chose to do so.

The BAP's written opinion specifically discusses how the Menjivars never filed a formal motion with the bankruptcy court to amend their FAC, never submitted a proposed second amended complaint, and never indicated in their briefing how they might amend the FAC to overcome its deficiencies. (AER 013:1-7.) They instead expressed to the bankruptcy court no more than a generalized desire to amend. (AER 013:1-4.)

Accordingly, in this appeal, the Court should deem the Menjivars' noncompliance with the Federal Rules as a factor weighing in favor of both a finding of waiver and a ruling that no abuse of discretion occurred below. *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (abuse of discretion is the standard of review in determining whether dismissal with prejudice should be affirmed). *See also Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (no abuse of

-44-

discretion exists without a definite and firm conviction that the lower court committed a clear error of judgment); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (same).

Seeking to avoid the consequences of their own inaction, the Menjivars have tried to cast blame on the bankruptcy court for not giving them more information on how to frame their pleading and on Wells Fargo for not informing them of their pleading deficiencies before filing the motion to dismiss. They maintain that they "did not have the benefit of the trial court's analysis of possible deficiencies". (AOB 21.) They also "did not know what deficiencies Wells Fargo would point out in its motion to dismiss." (*Id.*)

The Menjivars' reasoning is backwards. They had the burden of crafting a proposed amended pleading for the bankruptcy court's consideration. This was necessary in order to spare the bankruptcy judge "from having to somehow divine on his own whether the complaint could conceivably be amended to state a claim." *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 570 (9th Cir. 1986).

Addressing a similar situation in *Fischer v. Vantive Corp.*, 283 F.3d 1079 (9th Cir. 2001), the Court of Appeals commented that "the plaintiffs declined to say what additional facts they might plead if given the chance to amend." *Id*. at 1079. Such a failure was "a strong indication that the plaintiffs have no additional facts to plead." *Id*.

-45-

If the Menjivars had submitted a proposed second amended complaint to the district court, they could have "obviate[d] the strange result of allowing a plaintiff to transform the court of appeals into a court of first instance by forcing it to make the initial determination as to whether the new theory would survive a motion to dismiss." *Vincent*, 828 F.2d at 570.

The Menjivars had multiple opportunities to include rescission and UCL claims within their pleading below. While in state court, the Menjivars could have readily filed a complaint alleging rescission and violation of the UCL. These are claims under California law, capable of resolution by a superior court judge. But the Menjivars instead removed their case to bankruptcy court, where they later asserted hybrid claims under federal and state law in their FAC. Yet even after Wells Fargo filed a motion to dismiss the FAC, the Menjivars still did not seek leave to amend.

Following the bankruptcy court's dismissal of their FAC, the Menjivars appealed to the BAP. But they again neglected to assert any of the claims for rescission or UCL violations on which they now attempt to rely. Only upon filing their Opening Brief in this appeal did the Menjivars first reveal these new claims. In light of this lengthy history of repeated waiver, the dismissal rulings below must be affirmed.

-46-

**F.  The Menjivars have now abandoned several issues previously raised in the proceedings which they apparently deem unworthy of review.**

A number of issues that were the subject of argument and rulings before the bankruptcy court and the BAP have been conspicuously omitted by the Menjivars from this appeal, and must thus be deemed to have been abandoned by them. These abandoned issues include:

- whether California's discovery rule applies to the statutes of limitations for fraud, TILA, the FHA, and the ECOA;

- the non-viability of the UFTA claims;

- the inapplicability of Cal. Code Civ. Proc. § 337(1)'s statute of limitations (this statute is only cited twice in passing within the Opening Brief, and is not the subject of any argument) (AOB 2 & 17);

- HOLA preemption of the UFTA claims (as discussed below, the Menjivars instead argue in this appeal that Wells Fargo, as a national bank, has no standing to assert HOLA);

- the sufficiency of the consideration for their Loan (aside from a stray remark not included within the arguments of the Opening Brief) (AOB 16);

- the federal statutes of limitations applicable to the TILA, the FHA, and the ECOA claims; and

-47-

- the dismissal of claims in the FAC which are merely derivative of other, primary claims that are barred by the relevant statutes of limitations.

All of these issues have been waived and/or abandoned by the Menjivars. *Hale v. United States Trustee*, 509 F.3d 1139, 1145-46 (9th Cir. 2007) (findings of fact and legal conclusions made by lower court which are not specifically challenged in an opening brief are deemed waived); *Farmer v. McDaniel,* 666 F.3d 1228, 1233 (9th Cir. 2012) ("This Court 'review[s] only issues which are argued specifically and distinctly in a party's opening brief.'"); *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by…case authority are generally deemed waived."); *Simpson v. Union Oil Co. of California*, 411 F.2d 879 (9th Cir. 1969) (issues identified in an appellant's "Specifications of Error" and "Statement of the Case" but not addressed in the discussion section of the opening brief were deemed abandoned).

## G. The Menjivars' argument that Wells Fargo may not assert federal preemption is neither well taken in view of the facts of this case, nor does their discussion enable meaningful review of this issue in view of their omission of entire lines of authority.

The Menjivars do not contest the BAP's ruling on their challenge to HOLA preemption. They instead assert a brand new argument that even if HOLA

preemption would otherwise apply, Wells Fargo may not assert preemption because it is a national bank. (AER 34–37.)

This Court need not address this issue. Having not been raised below, it should be deemed waived. Beyond this, the Menjivars' argument is incomplete and fatally flawed.

### 1. *HOLA Background.*

Congress enacted HOLA during the Great Depression. *See Silvas v. E\*Trade Mortgage Co.*, 514 F.3d 1001, 1004 (9th Cir. 2008). The purpose of HOLA was to charter savings associations under federal law as a means of restoring public confidence through a nationwide system of savings and loan associations that are centrally regulated according to nationwide "best practices." *Id.* (citing *Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-61 (1982)). Through HOLA, Congress gave the Office of Thrift Supervision (OTS) broad authority to issue regulations governing federal savings associations. *See* 12 U.S.C. § 1464; *Silvas*, 514 F.3d at 1005.

In *Silvas*, the Ninth Circuit set forth the analysis to follow in order to determine whether a state law is preempted. First, a court should determine whether the law is the type of law listed in 12 C.F.R. § 560.2(b). If it is, the analysis ends, and the law is preempted. *See Silvas*, 514 F.3d at 1005. If the law in question is not listed in § 560.2(b), the court should determine whether the law affects lending. If the

answer is yes, then, pursuant to § 560.2(a), a presumption arises that the law is preempted. *Id.* "This presumption can be reversed if the law can clearly be shown to fit within the confines of paragraph (c) [whereby there is no preemption of state law if it only incidentally affects lending]." *Id.*

> **2.** ***Ninth Circuit district court decisions have split into three separate lines of authority regarding whether HOLA preemption may be asserted by a federal savings bank which has merged into a national bank. The Menjivars rely on an outlying minority position that is unpersuasive and should be disregarded as irrelevant to disposition of their appeal.***

The Menjivars obtained their Loan from World Savings in July 2007. (AER 258–78.) This is the point in time that they say they were deceived by misrepresentations that the Loan had a fixed interest rate. The originating lender, World Savings, was a federally chartered savings association regulated by the OTS. (AER 196, 198.) As a federal savings bank, World Savings was organized and operated under HOLA. 12 U.S.C. § 1461, *et seq.*

In January 2008, World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, which then converted and merged with Wells Fargo Bank, N.A. in November 2009. (AER 198–204.)

The Menjivars contend Wells Fargo, because it is a national bank, is unable to assert HOLA preemption. There is a 3-way divide among the district courts in the

Ninth Circuit on the issue of whether HOLA preemption may still be asserted after a federal savings bank has merged into a national bank.

But the Menjivars have failed to disclose this split of authority in their Opening Brief, and rested on a distinctly minority position, a case called *Gerber v. Wells Fargo Bank, N.A.*, No. CV 11-01083-PHX-NVW, 2012 U.S. Dist. LEXIS 15860 (D. Ariz. Oct. 19, 2011), that lies at the far end of a thrice-split spectrum.

The first of the three lines of authority holds that HOLA "attaches to a loan, and continues with that loan throughout its lifetime" even if the loan is later transferred to a bank that is not subject to HOLA. *See*, *e.g.*, *Poyorena v. Wells Fargo Bank, N.A.*, No. CV 14-683 GAF (Ex), 2014 U.S. Dist. LEXIS 49319, at *16 (C.D.Cal. Apr. 3, 2014); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D.Cal. 2010); *Osorio v. Wachovia Mortg.*, FSB, No. 12-cv-663 - IEG (BGS), 2012 U.S. Dist. LEXIS 64600, at *7 (S.D.Cal. May 8, 2012); *Marquez v. Wells Fargo Bank, N.A.*, No. C 13-2819 PJH, 2013 U.S. Dist. LEXIS 131364, at *11 (N.D.Cal. Sept. 13, 2013). Pursuant to this line of authority, a national bank may always assert HOLA preemption with respect to a loan that originated with a federal savings bank such as World Savings.

The second line of authority on this issue focuses on what point in time the alleged wrongful conduct occurred. If the conducted took place during the time of loan origination or servicing by a federal savings bank, like the alleged conduct

here, these courts hold that HOLA will still apply following a merger of the federal savings bank into a national bank. *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107-08 (N.D. Cal. 2013); *Rodriguez v. U.S. Bank Nat. Ass'n*, No. 12-00989 WHA, 2012 U.S. Dist. LEXIS 77228, at *22 (N.D. Cal. June 4, 2012) ("This Court has taken the position that whether HOLA governs the action depends on when the alleged conduct occurred."); *Rhue v. Wells Fargo Home Mortg.*, No. CV 12-05394 DMG (VBKx), 2012 U.S. Dist. LEXIS 188384, at *7 (C.D. Cal. Nov, 27, 2012); *Valtierra v. Wells Fargo Bank*, *N.A.*, No. 1:10-0849, 2011 U.S. Dist. LEXIS 18669, at *4 (E.D. Cal. Feb. 10, 2011).

If this line of cases is followed, then again, Wells Fargo assert HOLA preemption since the alleged fraud claimed by the Menjivars occurred in connection with the origination of the Loan by World Savings, a federal savings bank.

Finally, a spare minority of district courts follow the outlier holding by a district court in Arizona called *Gerber v. Wells Fargo Bank, N.A.*, No. CV 11-01083-PHX-NVW, 2012 U.S. Dist. LEXIS 15860 (D. Ariz. Oct. 19, 2011). *Gerber* held that HOLA preemption may never be asserted by Wells Fargo since it is a national bank. *Id.* at *7–10. *See e.g.*, *Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2014 U.S. Dist. LEXIS 27516, at *1-2 (N.D. Cal. Mar. 3, 2014);

*Roque v. Wells Fargo Bank N.A.*, No. 2:14-cv-00040-ODW(SSx), 2014 U.S. Dist. LEXIS 32935, at *10–11 (C.D. Cal. Feb. 3, 2014).

One of the cases cited by the Menjivars' in their Opening Brief — *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 995 (N.D. Cal. 2014) — takes the second approach. It holds that HOLA preemption should protect all successors to a loan if the allegations arise in connection with the loan's origination by a federal savings bank. *Penermon*, 47 F. Supp. 3d at 995. Following the *Penermon* case that is cited (but not examined) by the Menjivars, Wells Fargo may assert HOLA preemption against their claims.

Here, their UFTA claims arose from the origination of the Loan by World Savings, a federal savings bank. These claims are underpinned by the Menjivars' allegations that World Savings misrepresented the terms of the 2007 Loan, overcharged for settlement fees, and extended credit to the Menjivars under terms that the Menjivars considered unfavorable and incapable of helping them meet their personal financial goals. (AER 015:1-8.) Under this approach to HOLA preemption recognized in the *Penermon* decision cited by the Menjivars, and in most other cases, the UFTA allegations would be therefore preempted. (AER 015:7-28–016:24-26, citing 12 C.F.R. § 560.2(b)(4), (5), (9).)

That said, the Menjivars have failed to offer any reasoning or principles upon which this Court could meaningfully review these three lines of authority. In fact,

Appellants have omitted entirely any development or discussion of them from their Opening Brief. Therefore, the Court need not address HOLA preemption here in order to affirm, and if it did address it under the facts alleged by the Menjivars, then one of the two cases they cite is a distinct outlier, and the other supports the application of federal preemption to their claims.

## H.  The federal statutes asserted by the Menjivars under the FHA, ECOA and TILA are all untimely.

The Opening Brief argues that the three-year statute of limitations set forth at Civil Code section 1689(b) should apply to the Menjivars' FHA, ECOA, and TILA claims. This argument is meritless, since each of these federal claims has its own statute of limitations, as provided by federal law. The BAP panel below recognized this and properly ruled that the federal claims were accordingly time-barred. (AER 20:14–22:16.) See *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive.").

A civil action seeking relief under the Fair Housing Act (FHA) must be commenced "no later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice …." 42 U.S.C. § 3613(a)(1)(A).

-54-

Similarly, an action brought under the Equal Credit Opportunity Act (ECOA) must be commenced no more "than two years after the date of the occurrence of the violation." 15 U.S.C. § 1691e(f).

The Truth-In-Lending Act (TILA) generally applies a one-year statute of limitations to damages claims. 15 U.S.C. § 1640(e). Rescission claims under TILA have a three-year statute of limitations. *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1326 (9th Cir. 2012).

The Menjivars' entered the Loan in July 2007. Accordingly, when the Menjivars first asserted their FHA, ECOA and TILA claims in July 2012, these federal limitations periods had all expired.

## VIII.    CONCLUSION

Based on the foregoing, Wells Fargo respectfully submits that its motion to dismiss with prejudice was properly granted, the BAP properly affirmed the dismissal, no reversible error exists on this record under the legal standards correctly applied, and the rulings of the lower courts should be affirmed on this appeal.

Respectfully submitted,

Dated:  September 4, 2015      ANGLIN FLEWELLING RASMUSSEN
                              CAMPBELL & TRYTTEN LLP

By:  _s/ Steven. R. Telles_
        STEVEN R. TELLES

_Attorneys  for Creditor,_
_Defendant and Appellee_
WELLS FARGO BANK, N.A.

## CERTIFICATE OF COMPLIANCE

(FED. R. APP. P. 32(a); 9TH CIR. R. 32-1)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,144 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word 2010 word processing program, a 14-point font size, and the Times New Roman type style.

Dated: September 4, 2015  ANGLIN FLEWELLING RASMUSSEN
         CAMPBELL & TRYTTEN LLP

        By: _s/ Robert C. Little_____
          ROBERT C. LITTLE

        *Appellate Counsel for Creditor,*
        *Defendant and Appellee*
       WELLS FARGO BANK, N.A.

# STATEMENT OF RELATED CASES

(9TH CIR. R. 28-2.6.)

The undersigned certifies that the following are known related cases and appeals: *(1) Menjivar v. Wells Fargo Bank, N.A.* (Super. Ct. Los Angeles County, 2011, No. GC046687); *(2) Menjivar v. Wells Fargo Bank, N.A.*, No. 2:10-cv-09628-SJO-FFM (C.D. Cal. 2010) (Otero, S.); *(3) In re Menjivar*, No. 2:11-bk-17774-WB (Bankr. C.D. Cal. Feb. 23, 2011) (Brand, J.); *(4) In re Menjivar*, No. 2:11-bk-61208-NB (Bankr. C.D. Cal. Dec. 16, 2011) (Bason, N..); *(5) In re Menjivar*, No. 2:11-bk-12361-EC (Bankr. C.D. Cal. Jan. 19, 2011) (Carroll, J.); *(6) In re Menjivar*, No. 2:12-ap-01125-NB (Bankr. C.D. Cal. Jan. 30, 2012) (Bason, N.); *(7) Menjivar v. Wells Fargo Bank, N.A.,* No. CC-12-1608-KuBaPa (B.A.P. 9th Cir. Jan. 28, 2014).

Respectfully submitted,

Dated:  September 4, 2015

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

By:  _s/ Steven R. Telles_
STEVEN R. TELLES

*Attorneys for Creditor,*
*Defendant and Appellee*
WELLS FARGO BANK, N.A.

## CERTIFICATE OF SERVICE

(FED. R. APP. P. 25; 9TH CIR. R. 25-5(f))

*Certificate of Service When All Case Participants Are CM/ECF Participants*

I hereby certify that on September 4, 2015, I electronically filed the foregoing document with the Clerk of the Court for the Ninth Circuit Court of Appeals by using the CM/ECF system.

I certify that all parties of record to this appeal either are registered CM/ECF users, or have registered for electronic notice, or have consented in writing to electronic service, and that service will be accomplished through the CM/ECF system.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made, and that this declaration is executed in Pasadena, in the County of Los Angeles, State of California.

Dated:  September 4, 2015            *s/ Marianne Mantoen*
                                     Marianne Mantoen